2011 UT 23

**STATE of Utah, Plaintiff and Appellee,**

v.

**Zachariah E. CLARK, Defendant and Appellee,**

**T.C. and N.C., Minor Victims and Appellants.**

No. 20090525.

Supreme Court of Utah.

April 29, 2011.

---

Craig L. Barlow, Susan H. Eisenman, Salt Lake City, for plaintiff.

Herschel P. Bullen, Salt Lake City, for defendant.

Heidi M. Nestel, Brandon E. Simmons, Salt Lake City, for victims.

Justice LEE, opinion of the court:

¶ 1 This is an appeal from a criminal restitution order in which the trial court declined to require the Utah Division of Child and Family Services ("DCFS") to pay the crime victims' treatment costs. The appeal is unusual because neither the defendant nor the prosecution has participated. Appellants, T.C. and N.C., are the minor victims of sexual abuse perpetrated by their adopted older brother, Zachariah E. Clark. As part of the restitution ordered during sentencing, the court required the defendant to pay the costs of the victims' therapy. But as defendant was also sentenced to prison, he had no means to pay those costs. Because defendant was adopted through DCFS, appellants requested that DCFS be ordered to pay their treatment costs pursuant to Utah Code section 76–3–409(2). That request was ultimately denied.

¶ 2 On appeal, appellants raise several grounds for challenging the district court's refusal to order DCFS to pay the costs of the victims' treatment. We do not reach the merits of these contentions, however, because we hold that the victim-appellants have no statutory right to appeal.

### I

¶ 3 The defendant in the underlying criminal case, Zachariah E. Clark, was placed for adoption by DCFS in 1995. Twelve years later, on November 8, 2007, a jury convicted Clark of five counts of sodomy on a child and five counts of sex abuse of a child. The two minor victims and appellants in this case, T.C. and N.C., are Clark's younger brothers.

¶ 4 On August 8, 2008, after Clark's sentencing, the trial court entered an order requiring DCFS to pay the victims' uninsured treatment costs. That order was based on a provision of the Utah Code that authorizes district courts to order that an "appropriate state agency" pay treatment costs for victims of child abuse if the offender is unable to pay.[1] The court determined that DCFS was the appropriate agency to pay the treatment costs because DCFS had custody of the defendant prior to his adoption. And because the defendant had been sentenced to a minimum of sixteen years in prison, the court concluded that he would be unable to pay these costs. Consequently, the court ordered DCFS to pay the victims' treatment costs and ordered the defendant to reimburse DCFS through community service.

¶ 5 Subsequently, at a restitution review hearing on February 20, 2009, DCFS argued that the relevant code provision, Utah Code section 76–3–409(2), requires the appropriate state agency to pay the cost of treatment only "to the extent funding is provided by the Legislature." DCFS submitted affidavit testimony from Jack Green, its Administrative Services Director, suggesting that the legislature had not allocated funds to DCFS for treatment costs of victims such as T.C. and N.C. The court agreed with DCFS and, on May 21, 2009, vacated its prior restitution order and entered a new order explaining that "the only facts before the Court clearly establish that there are no funds appropriated by the Legislature to [DCFS] to pay the costs of reimbursing … the victims." On June 19, 2009, the victims appealed "from the entire order" entered by the district court on May 21, 2009.

### II

¶ 6 There is no inherent right to appellate review. Such a right must be posi-

---

1. Utah Code section 76–3–409(2) provides:

    The convicted offender shall be ordered to pay, to the extent that he or she is able, the costs of his or her treatment, together with treatment costs incurred by the victim and any administrative costs incurred by the appropriate state agency in the supervision of such treatment. If the convicted offender is unable to pay all or part of the costs of treatment, the court may order the appropriate state agency to pay such costs to the extent funding is provided by the Legislature for such purpose and shall order the convicted offender to perform public service work as compensation for the cost of treatment.

tively recognized by statute or a constitutional provision. *See Castle Dale City v. Woolley,* 61 Utah 291, 212 P. 1111, 1112 (1923).[2] Appellate review is not guaranteed by the federal Constitution. *Griffin v. Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Under the Utah Constitution, criminal defendants have "the right to appeal in all cases," UTAH CONST. art. I, § 12, but there is no such right for crime victims. In fact, the Victims' Rights Amendment of the Utah Constitution explicitly limits the remedies available to crime victims, ceding to the legislature the "power to enforce and define this section by statute." *Id.* art. I, § 28; *see also id.* ("Nothing in this section shall be construed as creating a cause of action...."); *State v. Lane,* 2009 UT 35, ¶¶ 23–24, 212 P.3d 529 (explaining that the Victims' Rights Amendment does not provide crime victims the right to appeal an order dismissing a criminal case).

■ ¶ 7 A number of Utah statutes afford special rights to crime victims during criminal proceedings.[3] But the only provision granting crime victims a right to appeal—and the provision appellants invoke on this appeal—is Utah Code section 77–38–11(2)(b). That section states:

> Adverse rulings on these actions or on a motion or request brought by a victim of a crime or a representative of a victim of a crime may be appealed under the rules governing appellate actions, provided that an appeal may not constitute grounds for delaying any criminal or juvenile proceeding.

This statute gives crime victims "the right to appeal rulings on motions related to their rights as a victim." *State v. Casey,* 2002 UT 29, ¶ 22, 44 P.3d 756.[4]

¶ 8 In 2009, the legislature revised the Rights of Crime Victims Act. *See* 2009 Utah Laws 120. The 2009 amendment provided enhanced remedies for crime victims in trial court proceedings. At the same time, it removed the provision granting the right to appeal from "[a]dverse rulings ... on a motion or request brought by a victim of a crime." *Id.* This amendment became effective on May 12, 2009, removing the statutory right to appeal from that day forward. One year later the legislature again amended the statute, reinstating section 77–38–11(2)(b) and restoring crime victims' right to appeal. *See* 2010 Utah Laws 331. This right of appeal became effective on May 11, 2010, leaving a gap in the statute's effectiveness from May 12, 2009, to May 11, 2010.

¶ 9 Appellants in this case filed their appeal on June 19, 2009. So at the time of the entry of the second restitution order and at the time the victims appealed from that order, there was no statute then in effect granting crime victims a right of appeal. In the absence of any statutory or constitutional basis for an appeal, appellants lack standing to press this appeal, and we lack jurisdiction to review the decision of the court below. *See Bradbury v. Valencia,* 2000 UT 50, ¶ 8, 5 P.3d 649.

¶ 10 Appellants seek to sustain the propriety of this appeal by asking us to apply the "version of the statute that was in effect at the time of the events giving rise to [the] suit." *Harvey v. Cedar Hills City,* 2010 UT 12, ¶ 12, 227 P.3d 256 (internal quotation marks omitted) (alteration in original). Because the statute granting victims a right of appeal *was* in effect at the time of the criminal activity giving rise to this case, appellants insist that their right to appeal subsisted

---

2. *See also State v. Taylor,* 664 P.2d 439, 441 (Utah 1983) ("Appellate jurisdiction ... may exist by virtue of a constitutional grant or by statute."); *State v. Olsen,* 39 Utah 177, 115 P. 968, 969 (1911) ("[T]he right of appeal is purely statutory and exists only when given by some constitutional or statutory provision.").

3. *See* The Victims' Rights Act, UTAH CODE ANN. §§ 77–37–1 to –5, the Rights of Crime Victims Act, UTAH CODE ANN. §§ 77–38–1 to –14, and the Crime Victims Restitution Act, UTAH CODE ANN. §§ 77–38a–101 to –601.

4. The State argues that section 77–38–11(2)(b) provides a right to appeal only from rights specified in Chapter 38, the Rights of Crime Victims Act. And because the substantive provision involved in this appeal is in section 76–3–409, the right to appeal is inapplicable. We express no opinion on the scope of section 77–38–11(2)(b) because it was not in force when the appellants filed this appeal.

throughout these proceedings and survived the repeal of the appeal provision in 2009.

¶ 11 We disagree. The courts of this state operate under a statutory bar against the retroactive application of newly codified laws. *See* UTAH CODE ANN. § 68-3-3 (Supp.2010). This statutory prohibition admits a single exception: "A provision of the Utah Code is not retroactive, unless the provision is expressly declared to be retroactive." *Id.*[5] We have likewise recognized a narrow, judge-made exception to the retroactivity ban, allowing that "when the purpose of an amendment is to clarify the meaning of an earlier enactment, the amendment may be applied retroactively in pending actions." *Dep't of Soc. Servs. v. Higgs*, 656 P.2d 998, 1000-01 (Utah 1982).[6] Absent either of these exceptions, the retroactivity ban holds, and courts must apply the law in effect at the "time of the occurrence" regulated by that law. *OSI Indus. v. Utah State Tax Comm'n*, 860 P.2d 381, 383 (Utah Ct.App.1993).[7]

¶ 12 Consequently, we have said that the parties' "substantive rights and liabilities" are determined by the law in place at the time "when a cause of action arises, and not [by] a subsequently enacted statute." *Carlucci v. Utah State Indus. Comm'n*, 725 P.2d 1335, 1336 (Utah 1986).[8] With respect to "procedural statutes enacted subsequent to the initiation of a suit," on the other hand, we have held that the new law applies "not only to future actions, but also to accrued and pending actions," and that "[f]urther proceedings in a pending case are governed by the new [procedural] law." *Higgs*, 656 P.2d at 1000-01.[9]

¶ 13 We have sometimes characterized this rule governing the applicability of changes in procedural rules as an exception to the bar against the retroactive application of statutes.[10] Under this conception, amendments to procedural statutes are said to be retroactive because they apply presently to cases whose causes of action arose in the past. But this formulation is imprecise. Instead, our cases stand for the simpler proposition that we apply the law as it exists at the time of the event regulated by the law in question. Thus, if a law regulates a breach of contract or a tort, we apply the law as it exists when the alleged breach or tort occurs—i.e., the law that exists at the time of the event giving rise to a cause of action. Subsequent changes to contract or tort law are irrelevant. Similarly, if the law regulates a motion to intervene, we apply the law as it exists at

---

5. This exception, in turn, is subject to constitutional proscriptions against ex post facto laws. U.S. CONST. art. I, § 10, cl. 1 ("No State shall ... pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts...."); UTAH CONST. art. I, § 18 ("No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be passed."); *see also Monson v. Carver*, 928 P.2d 1017, 1026 (Utah 1996) ("An ex post facto law is one that punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with a crime of any defense available according to law at the time when the act was committed." (internal quotation marks omitted)) *accord Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504-05, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995).

6. This second exception applies to those narrow circumstances in which the state legislature disagrees with this court's interpretation of a law and attempts to clarify that law's meaning through the amendment process. *Kilpatrick v. Wiley, Rein & Fielding*, 2001 UT 107, ¶ 59, 37 P.3d 1130. In such circumstances, we apply the law as amended to pending actions. *Id.*

7. *See also id.* ("[A] party is entitled to have its rights determined on the basis of the law as it existed at the *time of the occurrence*, and a later statute or amendment should not be applied retroactively ...." (emphasis added)).

8. *See also Brunyer v. Salt Lake Cnty.*, 551 P.2d 521, 522 (Utah 1976); *Shupe v. Wasatch Electric Co.*, 546 P.2d 896, 898 (Utah 1976); *Okland Constr. Co. v. Indus. Comm'n*, 520 P.2d 208, 210 (Utah 1974); *In re Anthony*, 71 Utah 501, 267 P. 789, 790 (1928); *Mercur Gold Mining & Milling Co. v. Spry*, 16 Utah 222, 52 P. 382, 384 (1898).

9. *See also Bd. of Equalization v. Utah State Tax Comm'n*, 864 P.2d 882, 884 (Utah 1993); *Docutel Olivetti Corp. v. Dick Brady Sys., Inc.*, 731 P.2d 475, 478 (Utah 1986); *Boucofski v. Jacobsen*, 36 Utah 165, 104 P. 117, 119 (1909) ("[T]he amendment related to a matter of procedure merely, and this would apply to all pending actions unless limited to future actions.").

10. *See OSI Indus.*, 860 P.2d at 383; *Smith v. Cook*, 803 P.2d 788, 791-92 (Utah 1990); *Carlucci*, 725 P.2d at 1337; *Pilcher v. State, Dep't of Soc. Servs.*, 663 P.2d 450, 455 (Utah 1983).

the time the motion is filed. A change in the procedural rule would not apply retroactively to prior motions to intervene. We would not expel a party for failure to conform to a newly amended intervention rule in her prior motions.

¶ 14 The difference is in the nature of the underlying occurrence at issue. On matters of *substance* the parties' primary rights and duties are dictated by the law in effect at the time of their underlying primary conduct (e.g., the conduct giving rise to a criminal charge or civil claim). When it comes to the parties' *procedural* rights and responsibilities, however, the relevant underlying conduct is different: the relevant occurrence for such purposes is the underlying procedural act (e.g., filing a motion or seeking an appeal). The law governing this procedural occurrence is thus the law in effect at the time of the procedural act, not the law in place at the time of the occurrence giving rise to the parties' substantive claims.

¶ 15 Under this framework, appellants have no statutory right to appeal. The law in effect at the time the victims filed their appeal did not afford them any such right. Nor did the subsequent amendment of that law expressly grant a right to appeal retroactively. And that law was not passed to correct an interpretation of the statute then in effect by any decision of this court. Thus, at the time the appellants filed their appeal, they had no right to appeal and therefore lacked standing to seek review of the trial court's decision in this court.[11]

¶ 16 We see no principled, legal basis for granting appellants' request for a "one-time exception ... out of fairness to the Victims." Appellants suggest that the legislature removed the statutory right to appeal from section 77–38–11 on May 12, 2009, and then reinserted it on May 11, 2010, after realizing the mistake. This is arguably supported by the general description of H.B. 293, which states that "[t]his bill adds back in subsections *inadvertently* deleted in a previous bill that apply to appellate rights for victims." H.B. 293, 59th Leg., Gen. Sess. (Utah 2010) (emphasis added).[12]

¶ 17 Whatever the reason for the removal from section 77–38–11 of the victims' right to appeal, we are powerless to extend the life of a statute beyond the time designated by the legislature. Any suppositions about what the legislature may have intended cannot properly override what it actually did. Once a statute has expired on its face, we may not reinstate it on the basis of our speculation that its sunset may have been the result of an oversight. As we explained in *Workers' Compensation Fund v. State*, 2005 UT 52, ¶ 22, 125 P.3d 852:

> [A]rguing for the present validity of statutory language that has been deleted by the Legislature demonstrates a misunderstanding of the fundamental nature of the legislative process.... Neither this court, nor any party, has the power to resurrect statutory language that has been repealed or significantly changed through proper amendment by the legislature.

## III

¶ 18 To invoke this court's jurisdiction, an appellant must have an effective statutory or constitutional right of appeal. Appellants in this case lacked a statutory right at the time they filed the appeal on June 19, 2009. The statute they relied on, Utah Code section 77–38–11(2)(b), had been repealed by the legislature from May 12, 2009, to May 11, 2010. As a result, the appellants improperly invoked this court's jurisdiction, and the appeal is dismissed.

---

11. *Chapman Indus. v. United Ins. Co. of Am.*, 110 Nev. 454, 874 P.2d 739 (1994) ("The right to appeal ... is wholly derived from statute and the right no longer exists after the repeal of the statute granting the right.").

12. *See also Hearing on* H.B. 293 *Before the H. Comm. on the Judiciary*, 59th Leg. 4:50–5:28 (Mar. 1, 2010) ("During the committee hearing about this bill the sponsor Representative R. Curt Webb introduced the bill as follows: 'We had granted victims' rights ... but had never given them remedies in the code. Last year we added those remedies. But in that bill, inadvertently, these sections were eliminated and they deal with the right of appeal of victims, and so we need to reinstate those rights of appeal that were inadvertently eliminated.' ").

¶ 19 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Justice LEE's opinion.